PD-0605-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/14/2015 7:54:31 PM
Accepted 5/15/2015 12:41:09 PM
ABEL ACOSTA
CLERK

No. PD-0605-14

IN THE COURT OF CRIMINAL APPEALS OF TEXAS, AT AUSTIN

FILED IN
COURT OF CRIMINAL APPEALS

May 15, 2015

ABEL ACOSTA, CLERK

**The State of Texas**

Appellant

v.

**Cuong Phu Le**

Appellee

On Appeal from Harris County in Case Number 1369320, from the 230th District Court, the Hon. Jeannine Barr, Judge Presiding; and the Opinion of the Fourteenth Court of Appeals in Case Number 14-13-00635-CR, Delivered April 8, 2014

# Motion for Rehearing

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW, Cuong Phu Le, Appellee in the above styled and numbered cause, and respectfully enters this Motion for Rehearing, pursuant to Rule 79.2, Tex.R.App.Pro., and would show the Court that on April 29, 2014, this Court reversed the actions of the trial court and Court of Appeals in a published opinion. See ***State v. Le***, _____ S.W.3d _____ (Tex.Cr.App. No. PD-0605-14; April 29, 2015).

This motion for rehearing is timely filed if presented or post-marked on or before May 14, 2015. In that regard, Appellee would

show the Court that it should grant rehearing and affirm the opinion and judgment of the Court of Appeals for the following reasons:

Based on its holding in **McClintock v. State**, 444 S.W.3d 15 (Tex.Cr.App. 2014), after excising evidence that a police drug-dog sniff had been conducted in this case, the Court held that the "untainted information" in the search-warrant affidavit clearly established probable cause. The Court reversed the judgment of the Court of Appeals and remanded the case to the trial court. **State v. Le**, slip op. at 15.

The Court also determined that, although the trial court and Court of Appeals had determined the "untainted information in the search-warrant affidavit" was stale, **Davis v. State**, 202 S.W.3d 149, 157 (Tex.Cr.App. 2006)("**Davis II**"), "makes clear that Appellee's approach is inconsistent" with **Illinois v. Gates**, 462 U.S. 213, 236 (1983). Appellee asserts that the Court's analysis of the instant case, **Davis** II, and **Gates**, is incorrect.

The warrant in **Davis** was a "smell" warrant, based on information from an officer that he smelled a strong chemical odor

2

coming from a residence that he associated with the manufacture of methamphetamine. *Davis v. State*, 165 S.W.3d 393, 397 (Tex. App. - Fort Worth 2005)("*Davis I*"). The affidavit submitted did not include information about the officer's expertise or experience in recognizing odors associated with methamphetamine manufacture. There were no details about why the officer thought it was from that particular house. Additionally, the officer who swore to the affidavit was not the officer who smelled the chemicals, he had no personal knowledge of the odor or the suspected residence, he did not verify the other officer's observations, and other information provided in the affidavit was neither verified nor substantiated. *Davis* **I**, 165 S.W.3d at 397-398.

The Court of Appeals averred that while "the veracity of an officer is presumed if unchallenged, expertise is not presumed."*Davis* **I**, 165 S.W.3d at 400. Over a dissent which noted that "common sense and reasonable interpretation" dictate that the officer (Westervelt) "had enough experience and expertise that he had previously smelled the same chemical odor and had

3

previously associated it with the manufacture of methamphetamine," the majority of the Court of Appeals held that this assumption added information to the affidavit that "is contained nowhere in it." *Davis* **I**, 165 S.W.3d at 400.

On discretionary review, this Court held that it was not unreasonable to infer that when a person identifies a smell by association, he has encountered that odor-causing agent before. *Davis* **II**, 202 S.W.3d at 157.

> This is especially so when that person may reasonably be expected to have had some experience with that kind of odor. For example, if a pilot says, "That smells like jet fuel," the natural assumption is that, because he is a pilot, he has previously encountered jet fuel and recognizes it specifically by its smell. That is not an unreasonable inference. Neither is the inference that a police officer in today's society, with the current prevalence of methamphetamine, who says that he smells an odor that "he has associated" with the manufacture of methamphetamine, has previously come into contact with a methamphetamine laboratory and can recognize the odor it emits.

*Davis* **II**, 202 S.W.3d at 157. Ultimately, the Court stated that it had examined the affidavit and concluded that the magistrate had drawn "reasonably available inferences" in finding that it supplied probable cause. "We hold that the trial court properly deferred to the magistrate's probable cause determination in this case, and

did not err to deny the Appellant's motion to suppress." *Davis* **II**, 202 S.W.3d at 157.

*Davis* **II** had <u>nothing</u> to do with the question of staleness. Further, *Davis* **II** is not supportive of the Court's holding in the instant case, and is not contrary to anything in *Gates*.

Appellee admits that, under *Gates*, the reviewing courts are supposed to provide "great deference" to a magistrate's determination of probable cause, and that the review should be based on a "totality-of-the circumstances approach." Nevertheless, to take this to mean that staleness has no place in a *Gates* analysis is to read something into the law that is simply unwarranted. More importantly, this Court has never said the doctrine of staleness was dead, and, in fact, has addressed "staleness" cases in the recent past.

The Court was concerned with staleness when it decided *State v. Jordan*, 342 S.W.3d 565 (Tex.Cr.App. 2011). There, the police officer presented his search-warrant affidavit to the magistrate on June 6, 2008. The magistrate signed the warrant at 3:54 a.m.

5

The officer's affidavit stated that the defendant "committed the offense of Driving While Intoxicated on June 6, 2008, and then described the driving and intoxication that constituted elements of that offense." *Jordan*, 342 S.W.3d at 570. The Court noted that the magistrate "needed to know when the [defendant] was stopped in order to determine the probability that evidence of an offense would be found in the [defendant's] blood at the time the warrant issued," and the officer should have included the time that he stopped or arrested the defendant. *Jordan*, 342 S.W.3d at 570. The Court nonetheless found that such an omission was not fatal, because the officer did say that the defendant had committed the offense on June 6th, so necessarily there was less than a four-hour interval between the initial stop and the signing of the warrant at 3:54 a.m. on that same date. *Jordan*, 342 S.W.3d at 571.

The Court was once again concerned with staleness when it delivered *Crider v. State*, 352 S.W.3d 704 (Tex.Cr.App. 2011). There, the defendant claimed, both at trial and on appeal, that the search warrant failed to establish "recent" probable cause. The

6

affidavit in support of the search warrant stated simply that Appellant was stopped on June 6 without referencing the time of day, and the warrant was signed by a magistrate at 1:07 a.m. on June 7. *Crider*, 352 S.W.3d at 706.

In an unpublished opinion, the Court of Appeals held that the search warrant affidavit established probable cause to believe that evidence of intoxication would be found in Appellant's blood, even though the officer did not specify when, on the day before he obtained the search warrant, he had stopped Appellant. PDR was granted to address whether a search warrant affidavit for blood must contain the time the DWI arrestee was stopped. *Crider*, 352 S.W.3d at 705.

Calling *Crider* a "bookend" case to *Jordan*, the Court held that the affidavit in that case was not sufficient to show probable cause "because there could have been a twenty-five-hour gap between the time the officer stopped [the defendant] and the time he obtained the search warrant for blood." *Crider*, 352 S.W.3d at 705. Specifically, the Court held that the affidavit lacked sufficient facts "within the four corners to establish probable cause that

7

evidence of intoxications would be found in [the defendant]'s blood at the time the search warrant was issued." *Crider*, 352 S.W.3d at 705.

Both *Crider* and *Jordan* considered and were concerned with the concept of the staleness of the evidence. Further, both *Crider* and *Jordan* were delivered long after the Court's decision in *Davis* **II**. Finally, both *Crider* and *Jordan* were considered in line with the "totality-of-the circumstances approach" prescribed by *Gates*.

In short, staleness is still a viable concern in Fourth Amendment search warrant cases. The question is, was, and remains, whether information contained within the four corners of an affidavit seeking the issuance of a search warrant demonstrates that the evidence in question would probably be found <u>at the time</u> the search warrant was issued. *Davis* **II**, 202 S.W.3d at 154.[1]

Judge Alcala delivered a dissenting opinion in this case. *State v. Le*, PD-0605-14 (Tex.Cr.App. April 29, 2015)(Alcala, J.,

---

[1] Citing, in footnote, *Cassias v. State*, 719 S.W.2d 585, 587 (Tex.Cr.App. 1986); *Schmidt v. State*, 659 S.W.2d 420 (Tex.Cr.App. 1983); and ; *Gish v. State*, 606 S.W.2d 883, 886 (Tex.Cr.App. 1980).

dissenting).  In that dissent, Judge Alcala noted that there are six significant problems that occurred in this case:

① dog-sniff evidence was used as probable cause for this warrant, but the Supreme Court has now disallowed that type of evidence in the manner that it was obtained in this case;[2]

② the officer's expert opinion about the citizen's tip is unsupported by the facts;[3]

③ the officer's general statements about high electricity usage being indicative of a marijuana growing operation are immaterial to this case;[4]

④ the officer's general statements about the significance of supplemental air conditioning are immaterial to this case;[5]

⑤ the vast majority of the information used to sustain the warrant was stale information obtained about two weeks before the search warrant was obtained;[6] and

⑥ there is inadequate information from which to infer that this was an ongoing marijuana growing operation.[7]

---

[2]  *State v. Le*, Alcala, J., dissenting, slip op. at 3.

[3]  *State v. Le*, Alcala, J., dissenting, slip op. at 3-5.

[4]  *State v. Le*, Alcala, J., dissenting, slip op. at 5-6.

[5]  *State v. Le*, Alcala, J., dissenting, slip op. at 6-7.

[6]  *State v. Le*, Alcala, J., dissenting, slip op. at 7-11.

[7]  *State v. Le*, Alcala, J., dissenting, slip op. at 11-12.

"Taking these six problems with the search warrant into consideration, the totality of the facts fail to establish probable cause for this search." *State v. Le*, Alcala, J., dissenting, slip op. at 2-3.

The six reasons cited by Judge Alcala notwithstanding, Appellant asserts, without the evidence of the "dog sniff," the remaining evidence failed to demonstrate that the requested evidence would probably be found at the time the search warrant was issued, because the information in the affidavit was stale. Additionally, as Judge Alcala has noted, examining the information in the search warrant in its totality, it fails to establish probable cause as to the existence of an ongoing indoor marijuana-grow operation.

The facts show that no one was living in a residence for a period of anywhere from one to three months; young Asian males would reportedly visit the residence in the evenings and stay a short while, but the affidavit includes no information about

10

whether they returned at all between the time of the citizen's tip and the stop of appellee; no light was emitted from the residence; on one day of one month, the blinds in the house were tightly shut, but the affidavit includes no information as to whether the blinds were shut at any other point in time during the month of the officer's surveillance; on one occasion, an officer smelled raw marijuana outside of the front door of the house; appellee did not live there but paid the utilities there; and one to two weeks after those events, on one occasion after he had been there for several hours, appellee and his car smelled like raw marijuana. According to the affidavit, evidence of high electricity usage and supplemental air conditioning units would have been indicative of an ongoing marijuana-grow operation, but no evidence of either of these circumstances was included in the affidavit. See ***Bonds v. State***, 403 S.W.3d 867, 873 (Tex.Cr.App. 2013). Furthermore, according to the affidavit, daily visits to an indoor marijuana-grow house are necessary to tend to the plants when someone does not

11

live at the residence, but the affidavit then fails to include any information to show that there were any visits to this location during the month between the citizen's tip and appellee's arrest.

Assuming that all of these facts occurred shortly before the search warrant was signed, they arguably provide probable cause to believe that there might be marijuana in the house. The totality of these facts, however, is inadequate here because there was about a two-week gap of time between almost all of these facts and the issuance of the warrant. In short, all of the facts were stale, except for the smell of raw marijuana on appellee and in his car, and that smell was inadequate to establish probable cause for the search of the house.

To overcome the staleness of the facts presented in the probable-cause affidavit, the affidavit would have had to show probable cause of an ongoing criminal activity, but it failed in this respect. As Judge Alcala has noted, in assessing whether information that might otherwise be stale can support a

12

probable-cause determination in light of the existence of an ongoing and continuous drug enterprise, courts have considered factors such as confirmation of ongoing drug activity from confidential informants; the defendant's prior drug-trafficking activities; and direct observations by law-enforcement agents indicating drug-trafficking activity.[8]

By contrast, here, there was little more than the smell of raw marijuana at the front door of the house on a single day to suggest that there was any drug activity at all at that location, let alone a "long-standing, ongoing pattern of criminal activity." *United States v. Rojas-Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) (citations omitted). Omitting the officer's general observations about marijuana-grow operations which were unconnected to the facts of this case and the impermissible dog-sniff evidence, the remainder of the affidavit contains isolated facts that, even taken

---

[8] *State v. Le*, Alcala, J., dissenting, slip op. at 13; see FN 1.

together, do not amount to probable cause to believe that there was an ongoing indoor marijuana-grow operation.

## Conclusion

All of the events described in the affidavit supporting the search warrant occurred about two weeks before the warrant was issued, and the sole event, the smell of raw marijuana on appellee and in his car, that occurred shortly before the issuance of the warrant fails to establish probable cause for the search of the house. Furthermore, the totality of the affidavit fails to establish probable cause of an ongoing criminal activity which would permit a court to consider the stale information.

## Prayer

WHEREFORE PREMISES CONSIDERED, Appellant prays this Honorable Court will grant his Motion for Rehearing, reconsider its rejection of the opinion of the Court of Appeals in this case, and, on rehearing, <u>affirm</u> the actions of the Court of Appeals and the trial court in this case.

14

Respectfully submitted,

**David Michael Ryan**
Attorney at Law
6161 Savoy Dr Suite 1116
Houston, Texas 77036
eMail: dmryanesq@hotmail.com
Tel. 713-223-9898
Fax: 713-223-8448
State Bar No. 00786412

**John G. Jasuta**
Attorney at Law
1801 East 51st Street, Suite 365-474
Austin, Texas 78723
eMail: lawyer1@johngjasuta.com
Tel. 512-474-4747
Fax: 512-532-6282
State Bar No. 10592300

**David A. Schulman**
Attorney at Law
1801 East 51st Street, Suite 365-474
Austin, Texas 78723
Tel. 512-474-4747
Fax: 512-532-6282
eMail: zdrdavida@davidschulman.com
State Bar Card No. 17833400

Attorneys for Cuong Phu Le

## Certificate of Compliance and Delivery

This is to certify that: (1) this document, created using WordPerfect™ X7 software, contains 2,588 words, excluding those items permitted by Rule 9.4 (i)(1), Tex.R.App.Pro., and complies with Rules 9.4 (i)(2)(B) and 9.4 (i)(3), Tex.R.App.Pro.; and (2) on January 6, 2014, a true and correct copy of the above and foregoing "Motion for Rehearing" was transmitted via the eService function on the State's eFiling portal, to David Ryan (dmryanesq@hotmail.com), current counsel for Appellee, Bridget Holloway (holloway_bridget@dao.hctx.net) & Alan Curry (curry_alan@dao.hctx.net), counsel for the State of Texas, and Lisa McMinn (lisa.mcminn@spa.state.tx.us), the State's Prosecuting Attorney.

**David A. Schulman**

16